UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 9:14-80856-CIV-RLR

ALBERT COLEMAN III,
an individual,

     Plaintiff,
v.

BLUEGREEN RESORTS MANAGEMENT, INC.,
et al.

     Defendants.
_____/

**DEFENDANT BLUEGREEN SERVICING, LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AS TO PLAINTIFF'S TCPA CLAIM (COUNT III)
AND INCORPORATED MEMORANDUM OF LAW**

Defendant Bluegreen Servicing, LLC ("Bluegreen Servicing" or "Defendant") respectfully seeks an order pursuant to Rule 56 of the Federal Rules of Civil Procedure granting partial summary judgment in its favor, and against Plaintiff, on Count III of Plaintiff's Amended Complaint (DE 1-2) for the following reasons:

**A.**    **Introduction**

In Count III, Plaintiff attempts to assert a claim against Bluegreen Servicing under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (the "TCPA"). Bluegreen Servicing is entitled to summary judgment on Count III because none of the four phone calls made to Plaintiff's cellular phone which form the purported basis for Plaintiff's TCPA claim were made from an "automatic telephone dialing system" (referred to as an "ATDS").

The lack of an ATDS is fatal to Count III because that claim is based on Section 227(b)(1)(A) of the TCPA. Section 227(b)(1)(A) only applies to phone calls made from an ATDS, meaning a system that has "the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers … ***without human***

*intervention*." See *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 F.C.C. Rcd. 14014, 14091-92, ¶¶ 131-132, 2003 WL 21517853 (F.C.C. July 3, 2003) (emphasis added); *see also* 47 U.S.C. § 227(a)(1).  Here, the undisputed evidence unequivocally demonstrates that the phones used by Bluegreen Servicing were conventional phones (where a human has to pick up the receiver and physically dial the phone number on a keypad), not a form of ATDS which could trigger the protections of Section 227(b)(1)(A).

For these reasons, and others set forth more fully below, there are no disputed issues of material fact, and Bluegreen Servicing is entitled to judgment as a matter of law on Count III of Plaintiff's Amended Complaint.  *See, e.g., Dennis v. Regional Adjustment Bureau, Inc.*, No. 09–61494–CIV, 2010 WL 3359369, at *3 (S.D. Fla. July 7, 2010) (granting summary judgment in favor of defendant on plaintiff's TCPA claim based on undisputed evidence that the phone calls at issue were manually dialed).

## II.     Relevant Procedural Background

Plaintiff originally filed this case in state court in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, asserting claims pursuant to Florida's Consumer Collection Practices Act ("FCCPA") against Bluegreen Servicing, Defendant Bluegreen Resorts Management, Inc. ("Bluegreen Management") and Defendant Bluegreen Vacations Unlimited, Inc. ("BVU") (collectively, the "Defendants").[1]  Plaintiff subsequently filed an Amended Complaint, in which he added a count against Bluegreen Servicing alleging violation of the TCPA, 47 U.S.C. § 227(b)(1)(A).  (DE 1-2 (p. 56 of 72), Count III, ¶¶ 70-74).[2]  After Plaintiff

---

[1]  On March 6, 2015, Plaintiff voluntarily dismissed Defendant BVU without prejudice.  (DE 26).

[2]  In contrast to the FCCPA claims (Counts I and II), the TCPA count (Count III) is asserted only against Bluegreen Servicing.  (*See* DE 1-2 (p. 57 of 72), "Wherefore clause" of Count III).

2

added the federal TCPA claim, the Defendants timely removed the action to this Court predicated on the federal question jurisdiction created by Plaintiff's addition of a TCPA claim. (DE 1).[3]

### III. Statement of Facts[4]

#### A. Plaintiff's Contractual Obligations

On or about February 4, 2011, Plaintiff entered into a contract, entitled a "Bluegreen Owner Beneficiary Agreement," whereby he agreed to purchase a timeshare estate at a resort called Harbor Lights, located in Myrtle Beach, South Carolina. (SUMF ¶ 1). Plaintiff financed the transaction through a mortgage loan from non-party Bluegreen Corporation. (SUMF ¶ 2). The loan was serviced by Bluegreen Servicing, which was the only entity involved in efforts to collect Plaintiff's delinquent loan installment payments. (SUMF ¶ 3).

As part of his timeshare purchase, Plaintiff became obligated to pay maintenance fees, club membership dues, and other expenses "as set forth in the Bluegreen Vacation Club Public Offering Statement, Trust Agreement and related documents." (SUMF ¶ 5). Plaintiff agreed to pay such fees and expenses "to the Vacation Club Managing Entity," which was identified in the contract to be Defendant Bluegreen Management. (SUMF ¶ 6).

In the timeshare documents executed by Plaintiff, the phone numbers he provided as both his home and work number was 912-678-XXXX. (SUMF ¶ 8). Plaintiff claims in this lawsuit that the phone number he provided was actually his cell phone number. (DE 1-2 (p. 49 of 72), ¶

---

[3] If this Court enters summary judgment on Count III, the only federal question claim contained in the Amended Complaint, the Court may decline to exercise its supplemental jurisdiction over Plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) (a district court "may decline to exercise supplemental jurisdiction over a claim" if it has "dismissed all claims over which it has original jurisdiction.").

[4] Pursuant to S.D. Fla. LR 56(a), Bluegreen Servicing has filed a separate Statement of Undisputed Material Facts as to which Bluegreen Servicing contends there are no genuine issues to be tried. Citations to "SUMF ¶ __" in this Motion refer to the corresponding paragraphs of Bluegreen Servicing's Statement of Undisputed Material Facts.

3

5). Among the documents executed by plaintiff was a "Consent to be Contacted" form, in which he confirmed the following: "I hereby expressly consent to be contacted by Bluegreen Corporation, its subsidiaries and affiliates … regarding their promotions, products and services via telephone … at the number(s) and address(es) provided above. I understand that this constitutes a waiver of my rights under the [TCPA]…" (SUMF ¶ 7).

### B. Plaintiff's Default

On or about March 1, 2013, plaintiff's lawyer, Michael D. Finn of the Finn Law Group, P.A., sent a letter addressed to "Bluegreen Corporation," in which he indicated that he had been retained by plaintiff "to explore the possibilities of lawfully terminating [plaintiff's] agreement with your organization." (SUMF ¶ 9). In the letter, Finn further stated that plaintiff "no longer intend[s] to make further payments to your Company…," and requested that "[d]uring the pendency of our representation we respectfully request that you limit your communications regarding this matter exclusively to these offices." (*Id.*). Finn's letter was directed to efforts to extract Plaintiff from his timeshare obligations, and had nothing to do with any debt collection calls. In the letter, Finn did not refer to the "Consent to be Contacted" document Plaintiff had executed through which Plaintiff consented to being contacted on his cell phone. (*Id.*). Nor did Finn or Plaintiff ever expressly state Plaintiff had revoked his consent to be called on the phone number he provided as part of his contact information in the documentation he had previously signed. (*Id.*).[5]

---

[5] Plaintiff contends that this letter from Finn constituted a revocation of plaintiff's consent to be contacted and a revocation of the waiver of his rights under the TCPA. (DE 1-2 (p. 51 of 72), ¶ 35). Bluegreen Servicing expressly disputes this contention. (*See, e.g.*, DE 6, Eighth, Ninth and Tenth Affirmative Defenses). However, because plaintiff's TCPA claim fails for the simple reason that Bluegreen Servicing did not make any collection calls using an ATDS, Bluegreen Servicing does not raise the consent/waiver issue as part of this motion, and continues to reserve the right to assert this defense, if necessary.

Thereafter, in March 2013, Plaintiff stopped making his monthly loan installment payments. (SUMF ¶ 10). He also failed to pay his maintenance fees, dues and other related expenses, which were due on March 15, 2013. (SUMF ¶ 11).

### C.    The Collection Calls to Plaintiff's Cellular Telephone Number

As alleged by Plaintiff, after Plaintiff stopped making his loan installment payments, Bluegreen Servicing's collections personnel made *four* calls to his telephone number, as set forth in the following table:

| Amended Complaint | Date of Call | Name of Employee | Result of Call | Recording Available? |
|---|---|---|---|---|
| ¶¶ 42, 44 | May 1, 2013 | Gina Anderson | No answer/ Voicemail message | Yes |
| ¶¶ 48, 50 | May 14, 2013 | Ronald Fowler | No answer/ Voicemail message | Yes |
| ¶¶ 52, 54 | June 19, 2013 | Ronald Fowler | No answer/ Voicemail message | Yes |
| ¶¶ 55, 57 | June 20, 2013 | Ronald Fowler | No answer/ Voicemail message | Yes |

(DE 1-2 (p. 52 of 72) through p. 54 of 72); *see also* SUMF ¶¶ 12-15).[6]

For each of the four calls at issue, Plaintiff alleges, in conclusory fashion, that Bluegreen Servicing used "an automatic telephone dialing system ('ATDS'), predictive telephone dialing system ('PTDS'), or artificial or pre-recorded voice ('APV') as those terms are defined by the TCPA." (DE 1-2 (p. 52 of 72), ¶ 41; *see also* DE 1-2 (p. 56 of 72), ¶ 70). Plaintiff failed to allege any facts to support this contention, and there is no evidence to support this conclusory

---

[6] Although plaintiff alleges that these four alleged calls are "but a subset of the calls placed to Plaintiff's cellular telephone" (*see* DE 1-2 (p. 54 of 72), ¶ 59), there is nothing in the record supporting plaintiff's allegation that additional calls were made. In fact, in his Rule 26 Initial Disclosures, plaintiff has confirmed that the only documentary evidence in his possession, custody or control in support of his claims are the copies of correspondence attached to his Amended Complaint and a recording of one the voicemail messages referenced above. (SUMF ¶ 32).

5

allegation. To the contrary, as discussed below, the Bluegreen Servicing collections associates who made these calls used conventional telephones, whereby they had to manually dial plaintiff's telephone number each time they called, not ATDS as Plaintiff would have to prove to avoid summary judgment on his TCPA claim.

**D.     The Conventional Telephone Equipment Used By Bluegreen Servicing**

During the time period at issue here (May to June 2013), Bluegreen Servicing employed approximately eight individuals who served as collection associates for the company. (SUMF ¶¶ 17-18). They were located in Bluegreen Servicing's offices in Boca Raton, Florida. (SUMF ¶ 19). Each collections associate sits at a typical cubicle, and on their desk is a computer – on which they can access information regarding a particular customer, such as amount past due and contact information – and a conventional phone with a headset. (SUMF ¶¶ 20, 21). The phones used by the associates do not interface with the associate's computer, nor are they linked to any automatic dialer system. (SUMF ¶ 22). Outbound calls on the phones used by the collections associates had to be manually dialed. (SUMF ¶ 24). In fact, when making a call, the agent had to manually dial "9" first before they could even access an outside line. (SUMF ¶ 25).

As noted in the table above, one of the calls at issue in this case was made by a collections associate named Gina Anderson, and the three other calls were made by an associate named Ron Fowler. Each of these calls were made from their respective work stations, using the conventional phones described above. (SUMF ¶¶ 26-27, 29-30). The calls were made to plaintiff's purported cell phone number, *i.e.*, 912-678-XXXX, because that is the number he gave as his ***home number*** when he purchased his timeshare and applied for his loan. (SUMF ¶ 16). So, when Ms. Anderson or Mr. Fowler called plaintiff, they had to first look at the home phone number field displayed on their computer monitor, and then, using their fingers, dial "9" and then that number on their telephone. (SUMF ¶¶ 27, 30). Ms. Anderson and Mr. Fowler both used

6

their own voices, not artificial or pre-recorded voices, when leaving voicemail messages. (SUMF ¶¶ 23, 28, 31). In their respective voicemail messages, Ms. Anderson and Mr. Fowler identified themselves and simply requested plaintiff to return the call. (SUMF ¶¶ 28, 31). Based on those four simple voicemail messages, each of which originated from a conventional phone, Plaintiff asserted the instant TCPA claim.

### IV.   Summary Judgment Standard

Rule 56(a) provides that a court must grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012); *see Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010). The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of proving that no genuine issue of material fact exists, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrell*, 477 U.S. 317 (1986); *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997). A mere "scintilla" of evidence supporting the non-moving party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### V.   Legal Argument

Bluegreen Servicing is entitled to summary judgment as a matter of law because the phone calls at issue here were *not* placed from an ATDS. To the contrary, it is undisputed that the four calls made by Bluegreen Servicing's personnel were dialed manually using conventional

phones, and thus summary judgment should be granted. *See, e.g., Dennis v. Regional Adjustment Bureau, Inc.*, No. 09–61494–CIV, 2010 WL 3359369, at *3 (S.D. Fla. July 7, 2010) (granting summary judgment in favor of defendant on plaintiff's TCPA claim based on undisputed evidence that the phone calls at issue were manually dialed).

In pertinent part, the TCPA provides that it shall be unlawful for any person in the United States:

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any ***automatic telephone dialing system*** or an artificial or prerecorded voice—
>
> > (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). The TCPA defines "automatic telephone dialing system" (or "ATDS") as "equipment which has the capacity—(A) to ***store or produce*** telephone numbers to be called, ***using a random or sequential number generator***; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1) (emphasis added).

In 2003, the Federal Communications Commission ("FCC") adopted rules addressing the meaning of "automatic telephone dialing system" (or "ATDS") under the TCPA. *See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 F.C.C. Rcd. 14014, 14090-92, ¶¶ 129-133, 2003 WL 21517853 (F.C.C. July 3, 2003) ("2003 Report"). In the 2003 Report, the FCC explained that the TCPA includes equipment that has "the capacity to store or produce numbers and dial those numbers at random, in sequential order, ***or from a database of numbers***." 2003 Report at 14091 ¶ 131 (emphasis added). This is because the basic function of such equipment is "the capacity to dial numbers ***without human***

*intervention*." *Id*. at 10492, ¶ 132 (emphasis added).[7]  The FCC affirmed this definition in a 2008 Declaratory Ruling.  *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 23 F.C.C. Rcd. 559, 556 ¶ 12, 2008 WL 65485 (F.C.C. Jan. 4, 2008).

Further, as used in the statutory definition of an ATDS, the term "*capacity*" refers to "present, not potential, capacity" to store, produce and automatically dial numbers.  *De Los Santos v. Millward Brown, Inc*., No. 13–80670–CV, 2014 WL 2938605, at *6 (S.D. Fla. June 30, 2014).  Judge Marra explained this point in *De Los Santos* as follows:

> As other courts have held, the term "capacity" refers to "present, not potential, capacity" to produce and dial numbers. *See e.g., Gragg v. Orange Cab Co., Inc*., C12–0576RSL, 2014 WL 494862 (W.D. Wash. Feb.7, 2014).  Otherwise, the term autodialer would have no "outer limit," for "[v]irtually every telephone in existence, given a team of sophisticated engineers working doggedly to modify it, could possibly store or produce numbers using a random or sequential number generator." *Hunt v. 21st Mortgage Corp*., 2:12–CV–2697, 2014 WL 4260275, at *5 (N.D. Ala. Feb. 4, 2014) … For this reason, even sophisticated computer systems are not necessarily autodialers. *See Dominguez v. Yahoo!, Inc*., No. 13–1887, 2014 W L 1096051, at *4 n. 4 & *5 (E.D. Pa. Mar.20, 2014) (granting summary judgment for the defendant because there was no evidence that the internet company Yahoo!'s computer system had the present capacity to randomly or sequentially generate numbers).

2014 WL 2938605, at *6.  Judge Marra further observed that no court had interpreted the term autodialer "so broadly" as to include smartphones or computers.  *Id*.

---

[7]  In the 2003 Report, the FCC focused on whether "predictive dialers" fell within the meaning and statutory definition of ATDS.  *See* 2003 Report at 14090 ¶ 129.  A predictive dialer is defined as "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls…. [t]he hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers."  2003 Report at 14091 ¶ 131.  "Although the sophistication of these devices exceeds that of dialing equipment previously used to arbitrarily generate ten-digit numbers, the FCC acknowledged that the 'basic function' remained the same—namely, 'the capacity to dial [phone] numbers [en masse] without human intervention' or oversight."  *Echevvaria v. Diversified Consultants, Inc*., No. 13 Civ. 4980, 2014 WL 929275, at *4 (S.D.N.Y. Feb. 28, 2014), *quoting* 2003 Report at 14092 ¶ 132.

Here, there can be no dispute that the calls made by Bluegreen Servicing to plaintiff's phone number were *not* made from an ATDS system. First, the record evidence unquestionably demonstrates that the telephone calls at issue were dialed manually by the two collections associates involved. (SUMF ¶¶ 24-27, 29-30). This fact alone warrants summary judgment. *See Dennis*, 2010 WL 3359369 at, *3 (finding no genuine issue regarding plaintiff's failure to prove the use of ATDS, where defendant submitted evidence, in the form of account notes indicating that the calls at issue were "manually dialed," and where plaintiff's only evidence submitted in opposition was her testimony that she believed that the voicemails she received from defendant "sounded pre-recorded").

Second, the phones used by Bluegreen Servicing undoubtedly did not have the present capacity to store, produce and dial numbers "using a random or sequential number generator," *see* 47 U.S.C. § 227(a)(1), nor could they dial from a pre-programmed "database of numbers … without "human intervention." *See* 2003 Report at 14091-92, ¶ 131-132. As the court in *De Los Santos* held, the term ATDS cannot be interpreted "so broadly" as to include smartphones and computers because those devices do not typically have the present capacity to store, produce and dial randomly or sequentially generated numbers. *De Los Santos,* 2014 WL 2938605, at *6. It stands to reason that if technologically-sophisticated devices such as smartphones or computers do not fall within the definition of an ATDS, then certainly far less sophisticated devices such as the conventional telephones used here cannot possibly be considered an ATDS. Indeed, as explained above, Bluegreen Servicing's telephones were not linked to any computer or dialer system, and could only be dialed manually. (SUMF ¶¶ 20-25). Accordingly, as a matter of law, Plaintiff cannot prevail on his claim under § 227(b)(1)(A) of the TCPA, because he simply cannot demonstrate that the calls made to his cell phone were made from an ATDS system.

**VI.    Conclusion**

For the foregoing reasons, Bluegreen Servicing respectfully requests that the Court grant summary judgment in favor Bluegreen Servicing with respect to Count III of Plaintiff's Amended Complaint.

Dated this 24th of March 2015

Respectfully Submitted,

**/s/ Scott W. Atherton**
Scott W. Atherton, Esq.
Florida Bar No. 0749591
Email: scott@athertonlg.com
Terence M. Mullen, Esq.
Florida Bar No. 0191957
Email: terence@athertonlg.com
ATHERTON LAW GROUP, P.A.
224 Datura Street, Suite 815
West Palm Beach, FL 33401
Telephone: (561) 293-2530
Facsimile: (561) 293-2593
***Attorney for Defendants***

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 24, 2015, the foregoing document was served on all counsel of record identified on the attached Service List via electronic mail, which is a permitted form of service in this matter by agreement of the parties.

> By: /s/ *Scott W. Atherton*
> SCOTT W. ATHERTON
> Fla. Bar No. 0749591

## SERVICE LIST

Ira R. Leavengood, Esq.
Aaron M. Swift, Esq.
Leavengood, Duval & Boyle, P.A.
Northeast Professional Center  3900 First Street North, Suite 100
St. Petersburg, FL 33703
ileavengood@leavenlaw.com
aswift@leavenlaw.com
*Attorneys for Plaintiffs*


Michael Finn, Esq.
Patrick Kennedy, Esq.
*Pleadings@Finnlawgroup.com*
*Patrick@Finnlawgroup.com*
*Michael@Finnlawgroup.com*
Finn Law Group, P.A.
10720 72nd Street, Suite 305
Largo, Florida 33777
*Attorneys for Plaintiff*